Filed 1/6/22  P. v. Collins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093043 |
| Plaintiff and Respondent, | (Super. Ct. No. 98F10648) |
| v. | |
| JOHNNY PAUL COLLINS, | |
| Defendant and Appellant. | |

A jury found defendant Johnny Paul Collins guilty of first degree murder and robbery.  The jury also found true a robbery-murder special circumstance allegation. Defendant petitioned the trial court for resentencing under Penal Code section 1170.95 based on changes made to the felony-murder rule by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, § 4).  The trial court denied defendant's petition, finding the record established defendant was ineligible for resentencing as a matter of law because the jury found true the special circumstance enhancement allegation.  On appeal, defendant argues the trial court erred in relying on

1

the special circumstance finding to disqualify him for relief. We disagree and, with a correction to the abstract, we affirm.

## BACKGROUND

We take the basic, relevant facts of defendant's case from our opinion in his original appeal. (*People v. Collins* (Jan. 13, 2003, C035384) [nonpub. opn.] (*Collins*).)

On October 22, 1998, at about 7:00 p.m., Robert Yee and his wife Sim were closing Bill's Market in Rio Linda, the business they had owned for 37 years. The Yees lived next door to the market. At around 7:15, three robbers (defendant, Shaun Edward Anderson, and James M.) wearing ski masks entered the store. Defendant carried a .38-caliber pistol. He and Anderson forced Mr. Yee into the back of the store while James M. went to the cash register area where Mrs. Yee was standing behind the counter.

Defendant and Anderson forced Mr. Yee to lie down; they taped his hands, mouth, and feet with duct tape. Defendant obtained Mr. Yee's house keys. He and Anderson went to the Yee residence.

Mr. Yee was on the floor for 10 to 15 minutes. At about the time he had worked himself free from the duct tape, he heard his across-the-street neighbor, Steven Parrish, call for him.

Mr. Parrish testified he entered the store and found Mrs. Yee laying face down on the floor, behind the counter, bound with duct tape. Mrs. Yee was not moving or breathing. Mr. Yee, who was "real distraught," started ripping all the tape off of Mrs. Yee and hollering at her. Mr. Parrish spoke to Mrs. Yee but got no response. He was unable to feel a pulse.

Dr. Robert Anthony performed an autopsy on Mrs. Yee. She had the autoimmune disease scleroderma, which caused her to lose a fair amount of lung tissue. Her impaired lungs stressed and enlarged her heart. Her lung disease had reached a plateau and stabilized, and she had begun the occasional use of oxygen. Dr. Anthony and Mrs. Yee's

2

attending physician both testified that she would have been at great risk of death by being unable to breathe, if she had been placed face down on the floor, or had her mouth covered with duct tape. Dr. Anthony opined that Mrs. Yee's death may have been caused by positional asphyxia, in which being placed prone prevented her from breathing effectively.

Well after the robbery, defendant was found and arrested in Arkansas. During his extradition hearing, defendant was overheard blurting out in a loud voice that he "did not murder that woman, that there was three of them. And that they had only tied the woman up, and that she was on oxygen and he did not kill her." (*Collins, supra*, C035384.)

In instructing the jury, the trial court included CALJIC No. 8.80.01, which states to the jury that unless defendant was the actual killer, "you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant . . . with reckless indifference to human life and as a major participant [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the commission of the crime of [r]obbery which resulted in the death of a human being, namely Sim Yee. [A defendant acts with reckless indifference to human life when that defendant knows or is aware that [his] . . . acts involve a grave risk of death to an innocent human being.]"

The jury found defendant guilty of second degree robbery of Robert and Sim Yee (Pen. Code, §§ 211, 212.5, subd. (c)),[1] and first degree murder of Sim Yee (§§ 187, 189). An allegation that the murder was committed during the robbery (§ 190.2, subd. (a)(17)) was found true. An allegation that defendant was armed with a firearm (§ 12022, subd. (a)(1)) was found not true. Defendant was sentenced for the murder to state prison for life without the possibility of parole.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant appealed and we affirmed the judgment.

In January 2019, defendant filed a petition for resentencing under section 1170.95 alleging he could not now be convicted of murder because of the changes made to sections 188 and 189. Counsel was appointed for defendant. The prosecution filed a response and moved to dismiss the petition on the basis that defendant failed to make a prima facie showing he was eligible for relief. Defendant filed a reply brief. In October 2020, the trial court denied defendant's petition, stating that in "its verdict the jury determined defendant was aiding and abetting the robbery, acted in a capacity of a major participant, and conducted himself with reckless disregard for human life knowing his acts involved a grave risk of death to an innocent human being. These findings, under case law as it has recently developed, make it clear that the defendant could still be prosecuted for murder under current felony murder law."

Defendant appealed.

## DISCUSSION

## I

### *Section 1170.95 Petition*

Defendant argues the trial court erred in relying on the jury's special circumstance finding to establish he was a major participant who acted with reckless indifference to human life because the law changed considerably when, after his conviction, our Supreme Court clarified the special circumstances analysis in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). We disagree.

Senate Bill 1437, effective January 1, 2019, was enacted after the Legislature determined a change in law was " 'necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless

4

indifference to human life.' " (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 275.)  To that end, Senate Bill 1437 amended sections 188 and 189.

Senate Bill 1437 also added section 1170.95, which permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the murder conviction and resentence the person on any remaining counts if, among other things, the petitioner could not be convicted of first or second degree murder due to the change in the law under sections 188 and 189. (§ 1170.95, subd. (a).)

Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder:  "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (Stats. 2018, ch. 1015, § 3.)

Section 190.2, subdivision (d) provides that, for the purposes of those special circumstances based on the enumerated felonies in paragraph (17) of subdivision (a), which include robbery, an aider and abettor must have been a "major participant" and have acted "with reckless indifference to human life."  (§ 190.2, subd. (d); *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 298.)  Thus, on its face, a special circumstance finding satisfies the requirements for accomplice murder liability even after Senate Bill 1437.  (§ 189, subd. (e).)

As defendant notes, since his conviction, the Supreme Court has clarified the analysis for who qualifies as a major participant acting with reckless indifference to

5

human life in *Banks* and *Clark*. Defendant claims that because the jury did not consider the facts of his case under the *Banks*/*Clark* analysis, the special circumstances finding cannot render him ineligible for relief as a matter of law. Defendant argues that section 1170.95 provides the opportunity for such a challenge to the special circumstances finding and that he should not be required to file a petition for writ of habeas corpus to challenge his special circumstances finding as a prerequisite to relief under section 1170.95. He argues that the "weight of the authority on this issue" supports his claim.

The People disagree and argue that the jury found that defendant was a major participant with reckless indifference to human life—the same finding required for a conviction under the newly amended law—and relief under section 1170.95 is predicated on a successful challenge to that finding through a habeas petition.

As both parties acknowledge, there is a split of authority on whether a defendant with a special circumstance finding must first seek relief under *Banks*/*Clark* through a habeas petition before filing a section 1170.95 petition. (Compare, e.g., *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284 (*Galvan*); *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted Jan. 13, 2021, S265918; and *People v. Allison* (2020) 55 Cal.App.5th 449 (*Allison*) [concluding the special circumstance finding renders a petitioner ineligible for relief as a matter of law and defendants seeking relief on the basis of *Banks*/*Clark* must do so through habeas corpus], with *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011, abrogated on other grounds in *People v. Lewis* (2021) 11 Cal.5th 952, 963; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, review granted Apr. 28, 2021, S267802; *People v. Secrease* (2021) 63 Cal.App.5th 231, review granted June 30, 2021, S268862 [reaching the opposite conclusion].) Our Supreme Court is now poised to resolve this question, having granted

review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606.

In the meantime, we find *Galvan* and *Allison* more persuasive than the cases relied upon by defendant. Initially, we agree with the *Allison* court that *Banks* and *Clark* did not change the law, but merely clarified the same principles that previously existed. (See *Allison, supra*, 55 Cal.App.5th at p. 457; see also *In re Miller* (2017) 14 Cal.App.5th 960, 978.) Nevertheless, the statute clearly indicates that eligibility for relief under section 1170.95, is contingent upon a defendant showing he "could not be convicted of first or second degree murder" due to changes to sections 188 or 189, not based on changes to the law made in *Banks* and *Clark*. (§ 1170.95, subd. (a)(3); *Galvan, supra*, 52 Cal.App.5th at p. 1142, review granted; *Allison,* at pp. 456-457.) Additionally, under defendant's proposed approach, the burden of proof in challenging a special circumstance finding would be unfairly advantageous for petitioners challenging the finding through a section 1170.95 petition, as the prosecution would be required "to prove the special circumstance beyond a reasonable doubt," whereas a challenge on direct appeal requires the prosecution to show that substantial evidence supports the finding, and it is defendant's burden in a habeas proceeding to show insufficient evidence supports the special circumstances finding. (*Galvan*, at pp. 1142-1143, review granted; *People v. Gomez, supra*, 52 Cal.App.5th at p. 17, review granted.) "[N]othing in the language of Senate Bill No. 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants." (*Galvan*, at p. 1143.) Finally, the statutory text indicates that the Legislature assumed a defendant would first seek relief in a habeas petition. Section 1170.95, subdivision (d)(2) provides in pertinent part: "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." A habeas petition provides an opportunity for such a finding under *Banks* and *Clark* and, if made, section 1170.95

7

requires trial courts to subsequently provide relief. (*People v. Ramirez* (2019) 41 Cal.App.5th 923, 933.)

We conclude that the appropriate avenue for defendant's challenge to the special circumstance allegation is through a petition of habeas corpus, rather than a section 1170.95 petition. (*In re Miller, supra*, 14 Cal.App.5th at p. 979 [permitting habeas challenge to special circumstance conviction].) The trial court did not err when it denied defendant's petition.

## II

### *Abstract of Judgment*

Although not raised by either party, we note the conviction for second degree robbery is denominated as "second degree murder." This represents a scrivener's error in recording the judgment rendered and may be corrected by amendment. (*In re Candelario* (1970) 3 Cal.3d 702, 705.) We therefore order the correction of the abstract of judgment to reflect the offense pertaining to section 211 as "second degree robbery" instead of a "second degree murder."

### DISPOSITION

The trial court's denial of defendant's section 1170.95 petition is affirmed. The trial court is directed to prepare a corrected abstract of judgment consistent with the above, and to deliver a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

_____\s\_____
BLEASE, Acting P. J.

We concur:



_____\s\_____
ROBIE, J.



_____\s\_____
DUARTE, J.