Filed 1/5/26  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085388 |
| v. | (Super.Ct.No. FVI21001163) |
| OCTAVIANO MENDOZA SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Shannon L. Faherty, Judge.  Affirmed with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Octaviano Sanchez appeals following a resentencing hearing whereby the trial court resentenced him to the middle term of 18 years four months in state prison.  On appeal, defendant contends the trial court prejudicially violated his Sixth Amendment right to a jury trial on the aggravating factors by imposing the middle term, over the presumed low term.  He also argues the abstract of judgment should be corrected to reflect the court reduced his mandatory assessments due to his inability to pay.  We direct the trial court to correct its resentencing minute order and to amend the abstract of judgment.  Otherwise, we affirm the trial court's resentencing order.

II.

FACTUAL AND PROCEDURAL BACKGROUND[1]

At the time of the incident, A.R. had been dating defendant for about a year.  A.R. went to visit her storage locker with her ex-boyfriend, O.B., who was going to help her carry items to the locker and take a bicycle in the locker that A.R. no longer wanted. While they were at the storage facility, defendant appeared and began yelling at O.B.  He accused A.R. of cheating on him with O.B., went to his vehicle, and returned with a 19-inch brush axe.  O.B. pulled out a small hatchet from his waistband to defend himself, but

---

[1]  The factual background and part of the procedural background is taken from this court's unpublished opinion following defendant's direct appeal in case No. E079995. (See *People v. Sanchez* (Nov. 30, 2023, E079995) [nonpub. opn.] (*Sanchez I*).)

he dropped it when defendant swung at him. Defendant punched O.B. and struck him with the axe multiple times in the head, then punched A.R. in the face. After he was taken to the hospital, O.B. received 19 staples on the back of his head. When police arrested defendant three days later, they found a .22 caliber small pocket derringer in his vehicle. (*Sanchez I*, *supra*, E079995.)

A jury convicted defendant of attempted murder (Pen. Code,[2] §§ 664, 187, subd. (a); count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), possessing a firearm as a felon (§ 29800, subd. (a)(1); count 3), possessing a concealed firearm in a vehicle (§ 25400, subds. (a)(1), (c)(1); count 4), and misdemeanor domestic battery (§ 243, subd. (e)(1); count 6). As to counts 1 and 2, the jury found true the enhancement allegation that O.B. suffered great bodily injury (§ 12022.7, subd. (a)). The trial court later found true the allegation that defendant had suffered a strike prior (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). (*Sanchez I*, *supra*, E079995.)

The trial court imposed a total aggregate sentence of 23 years four months, calculated as follows: 18 years for count 1 (the upper term of 9 years, doubled because of the strike prior), plus 3 years for the great bodily injury enhancement alleged as to that count, 16 months for count 3 (1/3 the midterm of 2 years, doubled because of the strike prior), and 365 days for the misdemeanor domestic battery. Counts 2 and 4, as well as the enhancement alleged as to count 2, were stayed under section 654. The court also imposed fines and assessments totaling $580. (*Sanchez I*, *supra*, E079995.)

---

[2] All future statutory references are to the Penal Code unless otherwise stated.

Defendant subsequently appealed, raising several challenges to his conviction and sentence. (*Sanchez I*, *supra*, E079995.) In an unpublished opinion filed on November 30, 2023, we affirmed defendant's judgment of conviction but remanded the matter for resentencing. (*Sanchez I*, *supra*, E079995.)

Following remand, on August 8, 2024, defendant filed a resentencing brief on remittitur. Defendant requested the trial court exercise its discretion and strike his prior strike conviction pursuant to section 1385, dismiss the great bodily injury enhancement attached to counts 1 and 2 under section 1385, subdivision (c), and stay the sentence on count 4 per section 654. Defendant also requested that the court not impose any fines and fees due to his indigency and objected to any such fines and fees in the absence of a finding as to his ability to pay pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

The resentencing hearing was held on January 10, 2025. At that time, the trial court noted it would be conducting a "complete resentencing." Before hearing from the parties, the court indicated it had considered the People's original sentencing brief from 2022, the defense's original sentencing brief from 2022, the original probation officer's reports, this court's 2023 unpublished opinion, and the defense's August 2024 resentencing brief.

After the People indicated they were submitting, defense counsel told the court that "originally, there was a biopsychosocial provided to the court." While counsel could not "remember if it was attached to the brief," he asked "the court to consider the

4

contents of that biopsychosocial as super mitigants and impose the low-term in light of the super mitigants there." The court responded "okay" and that it had "read and considered that."[3]

The court thereafter denied defendant's motion to strike his prior strike conviction. The court noted that although defendant's strike prior was 18 years old, he had been sentenced to prison four separate times in the intervening years. The court also explained that defendant had also suffered a total of 15 prior felony convictions, defendant had two parole violations, and the longest amount of time he had spent out of prison was approximately three years. After finding defendant was ineligible for probation, the court noted that the factors in aggravation in the probation report did "not consider the changes in the law pursuant to 1172.1, requiring findings by the jury." The court then stated, "the court can find, and has previously found, that the defendant's prior convictions as an adult are numerous and of increasing seriousness, that there are prior prison terms that have been served by the defendant, seven of them, that he has had prior unsatisfactory performance on parole." The court further explained that "[a]ll of those coming from the certified rap sheet of the defendant. So while I am adopting those, I am not actually imposing the upper term, but I am adopting them in order to adopt the middle term in this case." The court also declined defendant's request to dismiss all but one of his

---

[3] The biopsychological report is not in the appellate record. In response to this court's augmentation order dated March 13, 2025, the clerk of the superior court submitted an affidavit stating as follows: "Upon further research of the case file, court case management system, and consultation with the public defender and the courtroom, the biopsychological report was referenced in error and does not exist. Therefore[,] an augmented transcript will not be prepared."

enhancements, finding that doing so would endanger public safety, and that there is a likelihood dismissal of the enhancement would result in physical injury or a serious danger to others. The court then imposed a total term of 18 years four months which included a middle term sentence of 7 years for count 1, doubled because of the strike prior to 14 years. The court also imposed "a $70 court security fee, $300 victim restitution fine, as well as a $300 parole revocation restitution fine," but stayed that fine pending successful completion of parole.[4] Defendant timely appealed.

## III.

## DISCUSSION

A. *Imposition of Middle Term*

Defendant challenges the sentence as a violation of his Sixth Amendment constitutional right to a jury trial on the aggravating factors. He asserts that the middle-term sentence rests upon aggravating factors to which he neither stipulated nor were found true beyond a reasonable doubt by a trier of fact. He believes that the low term was the presumptive default in his case because he "has experienced psychological, physical, or childhood trauma" that "was a contributing factor in the commission of the offense." (See § 1170, subd. (b)(6)(A).)

---

[4] As to the fees, the court's minute order of the January 10, 2025, resentencing hearing indicates "Const./court operations fee of $70 *per* conviction." The amended March 12, 2025, abstract of judgment states a court operations assessment of "$160" per section 1465.8 and a conviction assessment of "$120" per Government Code section 70373. The court did not address defendant's ability to pay the fines and fees under *Dueñas*, and defense counsel did not raise the issue at the time of the resentencing hearing.

6

"Effective January 1, 2022, our determinate sentencing law, section 1170, was amended in several fundamental ways.  (See Sen. Bill No. 567 (2020–2021 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2020–2021 Reg. Sess.); Stats. 2021, ch. 695, § 5.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 (*Flores*).)  Senate Bill No. 567 amended section 1170, subdivision (b), to make the middle term the presumptive sentence unless certain circumstances exist.  (*Flores*, at p. 1038.)  As amended, section 1170, subdivision (b)(1) provides:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."  Section 1170, subdivision (b)(2), was amended to "authorize determinate sentences above the middle term 'only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'  (§ 1170, subd. (b)(2).)" (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 199 (*Hilburn*).)

Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695) also amended section 1170 by creating a presumption in favor of the lower term under specified circumstances.  (*Hilburn*, *supra*, 93 Cal.App.5th at p. 199.)  Section 1170, subdivision (b)(6) now provides:  "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term

7

would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense . . . ." The factors are divided into three categories: the defendant has experienced psychological, physical, or childhood trauma, including abuse, neglect, exploitation, or sexual violence (§ 1170, subd. (b)(6)(A)); the defendant is or was a youth at the time of the commission of the offense (*id.*, subd. (b)(6)(B)); and the defendant is or was a victim of intimate partner violence or human trafficking (*id.*, subd. (b)(6)(C)). However, "Paragraph (6) does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present." (*Id.*, subd. (b)(7).)

California Rules of Court, rule 4.420 now mirrors section 1170, subdivision (b)(1) and (2), and also provides: "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Cal. Rules of Court, rule 4.420(d).)

Defendant contends that once the court finds psychological, physical, or childhood trauma (§ 1170, subd. (b)(6)(A)) was a contributing factor in the commitment offense, the lower term becomes the "statutory maximum" as defined in *Blakely v. Washington* (2004) 542 U.S. 296, 303-304 (*Blakely*)—i.e., the "maximum sentence a judge may impose

solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" (*Id*. at p. 303, italics omitted.), *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), and *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). Defendant posits that if the lower term is the "statutory maximum," the trial court may not impose the middle term without finding one or more aggravating factors, which *Apprendi* and *Cunningham* require must be pled and proven at trial or admitted by the defendant.

Two appellate courts have rejected that argument based on statutory construction. In *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 928-929 (*Bautista-Castanon*), the court declined "to import [the subdivision (b)(1) and (2)] requirement into . . . subdivision (b)(6) as a prerequisite to imposing the middle term." The *Bautista-Castanon* court reasoned that, unlike subdivisions (b)(1) and (2) of the statute—which explicitly require stipulation or proof beyond a reasonable doubt of the facts relied on to impose an upper term sentence—subdivision (b)(6) "states no such requirement for the equitable balancing determination it entrusts to the trial court." (*Bautista-Castanon*, at p. 929.)

*Hilburn*, *supra*, 93 Cal.App.5th 189 agreed with *Bautista-Castonon* that "the language and framework of the amended law makes clear the Legislature intended to maintain the sentencing court's discretion to impose the middle term even if it finds the defendant falls into one of the three categories of section 1170, subdivision (b)(6)." (*Id.* at p. 204, citing *Bautista-Castonon*, *supra*, 89 Cal.App.5th at p. 929.) *Hilburn* concluded "if the Legislature wanted to limit the sentencing court's discretion, it knew how to do so

9

as set forth in subdivisions (b)(1) and (2)." (*Hilburn*, at p. 204.) The *Hilburn* court also rejected the argument that subdivision (b)(6) creates a new "statutory maximum" under *Apprendi* and *Blakely*, because "unlike the middle term," which is the presumptive term authorized by the verdict, "the lower term is presumed only after the court makes additional findings beyond those of the jury." (*Hilburn*, p. 205.) "Because those findings occur after the defendant is convicted, and are not necessary for imposition of the presumptive middle term, they do not create a new statutory maximum sentence." (*Ibid*.) The "new law does not implicate the concerns of *Apprendi*, which precludes only *increased* punishment based on facts not found by the jury." (*Ibid*.)

Defendant acknowledges his argument was rejected in *Hilburn* but believes it was wrongly decided and urges us to not follow it. We agree with *Hilburn*, *supra*, 93 Cal.App.5th 189, 204, and *People v. Bautista-Castanon*, *supra*, 89 Cal.App.5th 922, 929, that imposition of a middle-term sentence does not require aggravating factors to be admitted or proven beyond a reasonable doubt. Unlike section 1170, subdivisions (b)(1) and (b)(2)—which expressly require stipulation or proof beyond a reasonable doubt of the facts relied upon to impose an upper-term sentence—subdivision (b)(6) states no such requirement. (*Hilburn*, at p. 204; *Bautista-Castanon*, at p. 929.) Subdivision (b)(6) of section 1170 does not implicate the Sixth Amendment jury trial guarantee because it creates a potential reduced term, not an increased term, based upon findings of eligibility and the interests of justice. (*Hilburn*, at p. 204.) Circumstances in aggravation or mitigation need only rest upon a sufficient factual basis for this purpose. (*Id.* at p. 205.)

10

We are not persuaded that the lower term becomes the "statutory maximum" once the trial court finds that subdivision (b)(6) of section 1170 applies. Subdivision (b)(1) of section 1170 first authorizes and makes presumptive the middle term based on the verdict, giving the trial court discretion to impose either a middle or lower term sentence. (§ 1170, subd. (b)(1) ["the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term."]; § 1170, subd. (b)(7) ["Paragraph [(b)(6)] does not preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present"].) Thereafter, when the court finds subdivision (b)(6) does apply, its discretion is directed to determining whether imposing the lower term would be "contrary to the interests of justice," in which case the already authorized middle term would be imposed.

*Apprendi* prohibits judicial factfinding to impose a sentence beyond what the sentencing scheme authorizes from the verdict alone. *Apprendi* does not limit the trial court's discretion to consider "various factors relating both to [the] offense and offender [ ] in imposing a judgment *within the range* prescribed by statute." (*Apprendi*, *supra*, 530 U.S. at p. 481.) According to *Cunningham*, the Sixth Amendment is not violated unless the verdict alone does not authorize the sentence and "instead, the judge must find an additional fact to impose the longer term." (*Cunningham*, *supra*, 549 U.S. at p. 290.) The pre-2007 determinate sentencing law invalidated in *Cunningham* "authorize[d] the judge, not the jury, to find the facts permitting an upper term sentence." (*Id.* at p. 293.) In contrast here, any aggravating circumstances rendering a section 1170,

11

subdivision (b)(6) lower term inappropriate lead only to the imposition of the middle term already authorized under subdivision (b)(1) of section 1170.

Moreover, we do not believe section 1170, subdivision (b)(6)(A) applied to this case. Contrary to defendant's claim, there is no evidence to indicate defendant had experienced psychological, physical, or childhood trauma that was a contributing factor in the commission of the offenses or that there was a presence of a mitigating factor that would entitle him to a presumptive lower term. Besides defense counsel's general statement that such a report was prepared, there is no indication in the record that a biopsychosocial report was ever prepared. And since the report never existed, the court could not have considered it or that it could be used as the basis to conclude defendant was entitled to a presumptive low term sentence. As set forth in a letter from the deputy clerk, "the biopsychological report was referenced in error and does not exist." The clerk came to this conclusion after "research of the case file, court case management system, and *consultation with the public defender and the courtroom*."

Furthermore, the trial court did not abuse its discretion in imposing the middle term. After a sufficient factual basis to support aggravating or mitigating factors is found, the court has broad discretion in its sentencing determination. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, superseded by statute as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 757.) We review the sentencing decision for an abuse of discretion. (*Ibid*.) The court abuses its discretion if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. (*Ibid*.)

12

Here, the trial court carefully considered the relevant aggravating and mitigating circumstances and appropriately determined that defendant's criminal history and the circumstances of the crimes warranted a middle-term sentence. The court's resentencing decision was not an abuse of discretion. (*Flores*, *supra*, 73 Cal.App.5th at p. 1039.) The court properly weighed the factors and determined that the aggravating factors predominated. The court found the following aggravating factors true: (1) defendant's prior convictions as an adult were numerous and of increasing seriousness; (2) defendant suffered seven prior prison terms; and (3) defendant exhibited prior unsatisfactory performance on parole. As the court explained, the evidence supporting these aggravating factors was all found in defendant's certified rap sheet.

Based on the foregoing, the trial court properly sentenced defendant to the middle term and did not violate defendant's Sixth Amendment right to a jury trial on the aggravating factors by imposing the middle term.

B. *Correction of Abstract of Judgment and Minute Order*

Defendant contends the abstract of judgment and minute order of the January 10, 2025 resentencing hearing do not accurately reflect the trial court's oral pronouncement of judgment as to the fines and fees imposed. Specifically, he claims the abstract of judgment and the resentencing minute order must be amended to reflect the fact that the court imposed one single court operations assessment and one single court construction fee. The People believe "[i]t is possible that by using the word 'a' the court meant to

13

impose only one $70 court fee" and that "[i]t is also possible the court's use of the word 'a' meant that it was imposing 'a $70 court security fee' for each count."

A trial court must accurately set forth all fines and fees in the abstract of judgment. (*People v. High* (2004) 119 Cal.App.4th 1192, 1200 ["If the abstract does not specify the amount of each fine, the Department of Corrections cannot fulfill its statutory duty to collect and forward deductions from prisoner wages to the appropriate agency"].)

At the time of the January 10, 2025, resentencing hearing, the trial court imposed "a $70 court security fee, $300 victim restitution fine, as well as a $300 [stayed] parole revocation restitution fine." As to the fees, the court's minute order of the January 10, 2025, resentencing hearing indicates "Const./court operations fee of $70 *per* conviction." The amended March 12, 2025, abstract of judgment states a court operations assessment of "$160" per section 1465.8 and a conviction assessment of "$120" per Government Code section 70373. While defense counsel argued for an ability to pay finding in his resentencing motion, the court did not address defendant's ability to pay the fines and fees under *Dueñas*, and defense counsel did not raise the issue at the time of the resentencing hearing. However, it appears the trial court implicitly found defendant had the ability to pay for such a fee as to one count. As such, for the sake of judicial economy, we will order the trial court to correct its January 10, 2025, resentencing minute order and amend the abstract of judgment.

"Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People*

14

*v. Zackery* (2007) 147 Cal.App.4th 380, 385.) We have the inherent power to correct clerical errors so as to make records such as abstracts of judgment or minute orders conform to the trial court's oral pronouncement. (*In re Candelario* (1970) 3 Cal.3d 702, 705.) Thus, we are directing the court to amend the abstract of judgment to conform to its oral pronouncement of judgment.

IV.

DISPOSITION

The clerk of the superior court is ordered to amend the January 10, 2025, resentencing minute order and the abstract of judgment to reflect that the trial court imposed a court construction fee in the amount of $30 (Gov. Code, § 70373, subd. (a)) and court operations fee in the amount of $40 (§ 1465.8, subd. (a)) for one count, totaling $70. The superior court clerk shall prepare an amended minute order and abstract of judgment and forward a copy of each to the Department of Corrections and Rehabilitation. In all other respects, the trial court's resentencing order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

15